In re BLUMENTHAL. See Case No. 7,105.

BLUNT (ALLEN v.). See Cases Nos. 215–217.

## Case No. 1,577.

BLUNT et al. v. The FRANK.

[N. Y. Daily T. June 20, 1855.]

District Court, S. D. New York. June 19, 1855.

SALVAGE—BY PILOTS—TOWING VESSEL IN DISTRESS.

[1. Pilots conducting into port vessels in distress or in apprehension thereof are entitled to salvage compensation therefor.]

[2. Towing into port a vessel in peril and distress, and unable herself to reach a place of safety, is salvage service.]

[In admiralty. Libel by George W. Blunt and others against the schooner Frank for salvage. Decree for libellants.]

Brown, Hall & Vanderpoel and Mr. Stoughton, for libellants.

Loomis & Thayer and Mr. Chatfield, for claimants.

INGERSOLL, District Judge. This libel is filed by the owners and crew of the pilot-boat Moses H. Grinnell, to recover a salvage compensation for services rendered to the schooner Frank. The schooner sailed on the 12th of October, 1853, from Aux Cayes bound to Boston, with a cargo of coffee and logwood. On the 4th of November she experienced a heavy gale, which continued till the 9th, and during which she lost her foremast, which broke off about half way up, her maintopmast, her jibboom and bowsprit cap, sprung her mainmast, and sustained other damage, so that her master deemed it advisable to bear up for New York, she being then about in the latitude of Cape Henry. On the 11th she was fallen in with by the pilot-boat about sixty miles from Sandy Hook. The wind had been fair and moderate till then, and she had made headway without tacking at the rate of three or four miles an hour. One of the three pilots on board the boat, boarded her, and to him the captain represented the condition of his vessel; told him that his crew were good for nothing; that he was about beat out, and had but two days' provisions on board. There was at this time also the appearance of a northeast blow.

The pilot refused to take charge of the schooner unless the pilot-boat was employed to tow her, which was assented to by the master. The pilot-boat accordingly took her in tow, and got up to Staten Island with her about 6 o'clock in the morning of the 12th. The wind, which had been fair, began to die away when they were about twenty-two miles south of the Hook. On the morning of the 12th, there was a light breeze from the northeast, which increased into a heavy blow on the 13th.

The pilot-boat was considerably strained and injured in performing this service, and the three pilots lost other pilotage. They also paid a steamboat to tow the schooner up to New York after she arrived inside the Hook. The schooner and her cargo were worth $6,000.

It was agreed between the pilot who went on board and the master of the Frank, that in case the parties could not agree upon the amount to be paid to the libellant, it should be determined by referees to be agreed upon. From the arrival of the Frank at New York on Nov. 12 to the 30th, various efforts were made by the parties to agree upon referees, but without success, and on the 30th, just be-

fore the Frank was about to sail, the libel was filed.

HELD BY THE COURT: That it is the duty of a pilot to conduct vessels in and out of port for proper remuneration, but that duty is confined to conducting into and out of port vessels in no state of distress or alarm, and having no apprehension of distress arising from antecedent causes. The Elizabeth, 8 Jur. 365.

That a mere towage service is confined to vessels which have received no damage which puts them in peril of loss.

That upon the evidence the Frank, in the crippled condition in which she was, would not have been able to reach Sandy Hook before the gale of the 13th without assistance, and if she had not done so, she would in all probability have been driven to sea or on shore, and lost in either case.

That she was then in distress and in peril, so much so that her master had thought it unsafe to proceed on her voyage. She had been greatly injured, so that it is doubtful whether she could make a tack, and was in no safe condition to navigate in a severe blow.

That the services rendered by the libellants were therefore something more than pilotage services, or than towage services. They were rendered to a crippled vessel in danger of loss, and were therefore salvage services.

That the failure to agree upon referees was not the fault of the libellants, and should not deprive them of the right to recover in this suit.

That on the evidence a fair compensation for merely towing such a vessel, as the libellants did, would be from $500 to $700.

That the libellants are entitled to more liberal compensation, and that $900 is a reasonable sum.

Decree, therefore, for libellants for that amount.